UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN HOLDER,

                              **Plaintiff,**

- *against* -

THE CITY OF YONKERS,[1] THE BOARD OF
EDUCATION OF THE CITY OF YONKERS,
LINCOLN HIGH SCHOOL, AND IVAN TOPER, IN
HIS OFFICIAL CAPACITY AS PRINCIPAL OF
LINCOLN HIGH SCHOOL,

                              **Defendants.**

04 Civ. 10314 (LMS)

<u>**DECISION AND ORDER**</u>

Plaintiff John Holder (herein, "Plaintiff"), an African-American male teacher in the Yonkers Public School system, commenced the present action against his employer, The Board of Education of the City of Yonkers (herein, "Defendant"),[2] pursuant to Title VII of the Civil Rights of 1964 for alleged racial discrimination. <u>See</u> Docket #1, Plaintiff's Complaint (herein, "Compl."). In particular, Plaintiff interposes four causes of action against the Defendant, including claims of a hostile workplace environment, retaliation, unlawful discrimination, and a supplemental state law claim of intentional infliction of emotional distress. <u>See</u> Compl. at ¶¶22-

---

[1] A partial stipulation discontinuing the action against the City of Yonkers as a named defendant was entered on May 26, 2005.

[2] As Lincoln High School itself is not an entity that can be sued, and because the claims against Mr. Ivan Toper, in his official capacity, are tantamount to claims against the agency for which he works, the only real party in interest as a defendant is the Board of Education of the City of Yonkers. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (a suit against an individual in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which [the] officer is an agent.") (quoting <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690 n.55 (1978)).

29. The parties have consented to the undersigned pursuant to 28 U.S.C. §636(c) for all purposes, including resolution of dispositive motions and trial. Presently before this Court is the Defendant's motion for summary judgment seeking dismissal of the Plaintiff's Complaint in its entirety. See Docket #10, Defendant's Notice of Motion for Summary Judgment. For the following reasons, the Defendant's motion for summary judgment is granted *in toto*, and the Plaintiff's Complaint is dismissed with prejudice.

## BACKGROUND

A.  Facts

The parties do not dispute the following basic facts that are material to a decision in this case.[3]

The Plaintiff began working as a social studies teacher in the Yonkers Public School system in September of 2000. See Defendant's Statement of Undisputed Material Fact (herein, "Def's 56.1 Statement") at ¶1. Plaintiff initially worked as a teacher at Emerson Junior High School, id. at ¶3, and subsequently accepted a transfer to Lincoln High School, see id., where he is currently employed, id. at ¶4. Plaintiff has received annual step increases in his salary, id. at ¶¶6, 10, currently enjoys medical coverage provided by his employer, id. at ¶7, and is a participant in the New York State pension system, id. at ¶8.

During the course of his employment Plaintiff received several annual evaluations and several periodic formal observations conducted by a member of either Emerson's or Lincoln's

---

[3] As discussed, infra, the Plaintiff's failure to comply with Local Rule 56.1(b), and the Defendant's proper citation to admissible evidence in its Rule 56.1 Statement of Undisputed Material Facts, both lead me to conclude that the Defendant's Local Rule 56.1 Statement should be adopted as the undisputed statement of fact of this case.

administrative personnel.  See Def's 56.1 Statement at ¶¶12, 16, 17; see also Def's 56.1 Statement, Ex. D, E and F (Plaintiff's 2002-03, 2003-04, and 2004-05 annual evaluations); Plaintiff's 56.1 Statement of Undisputed Material Fact (herein, "Pl's 56.1 Statement"), Ex. 14, 17, and 20 (formal observation evaluations of Plaintiff dated March 2004, June 2004, and November 2004).  Both the formal observation evaluation and the annual evaluation must be rendered either satisfactory or unsatisfactory, and both provide narrative sections allowing the administrator conducting the review to offer his or her comments to the teacher being observed.

In particular, the Plaintiff received several satisfactory formal observation evaluations during his time at Emerson Junior High School, see Pl's 56.1 Statement, Ex.3-5 and 7-8, a satisfactory annual evaluation for the 2000-01 school year, see Pl's 56.1 Statement, Ex. 6, and another satisfactory annual evaluation for the 2001-02 school year, which was the Plaintiff's first full year as a teacher at Lincoln High School, see Pl's 56.1 Statement, Ex.10.  Although all of these evaluations were rendered satisfactory, the Plaintiff's 2001-02 annual evaluation noted that the Plaintiff had "a few difficulties [with his classroom management]."  See Pl's 56.1 Statement, Ex. 10 at p. 1.

Beginning with the Plaintiff's 2002-03 annual evaluation, each of the Plaintiff's subsequent evaluations sounded in a more critical tone.  See Pl's 56.1 Statement, Ex. 12.  Almost all of the narrative sections in the Plaintiff's 2002-03 annual evaluation contain suggestions about how the Plaintiff could improve his teaching style, the substance of his classroom material, or his interpersonal relations with coworkers and superiors,  see Pl's 56.1 Statement, Ex. 12 at p. 1 ("[Plaintiff] needs to plan and use a variety of additional teaching strategies that will more successfully engage his students . . . ."); ("[Plaintiff's] instructional delivery often fails to engage

3

his students [sic] interest."); ("[Plaintiff] does not demonstrate an understanding of the develmental [sic] stages of students."); ("[Plaintiff] has difficulty working collaboratively with others, particulary [sic] the school administration."). Additionally, the Principal, Mr. Toper, noted that the "[Plaintiff's] classroom teaching has been in need of improvement and has not been satisfactory for most of this year." See Pl's 56.1 Statement, Ex. 12 at p. 2. Thereafter, Plaintiff received an unsatisfactory formal observation review in March of 2004, see Pl's 56.1 Statement, Ex. 14, an unsatisfactory annual review for the 2003-04 academic year, see Pl's 56.1 Statement, Ex. 16, an unsatisfactory formal observation in June of 2004, see Pl's 56.1 Statement, Ex. 17, and an unsatisfactory annual review for the 2004-05 academic school year, see Def's 56.1 Statement, Ex. F. Each of these unsatisfactory evaluations contained criticisms of the Plaintiff's efforts to engage student participation during class, see Def's 56.1 Statement, Ex. E, and of his inability to plan and deliver classroom lessons, see Def's 56.1 Statement, Ex. F; see also Pl's 56.1 Statement, Ex. 17.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (herein, "EEOC") on September 14, 2004. See Pl's 56.1 Statement, Ex. 19. In his EEOC complaint, the Plaintiff alleged discrimination based upon his race, color, and age in violation of Title VII and the Age Discrimination in Employment Act.[4] Id. In the narrative attached to his EEOC complaint, the Plaintiff argued that he had become the target of a campaign of retaliation and harassment after he refused to offer his own opinion of a coworker's pedagogy at Principal Toper's request and after he informed the Lincoln High School

---

[4] In his Complaint, however, Plaintiff appears to have abandoned his ADEA claim as he only asserts claims under Title VII for discrimination based upon his race. See Compl. at ¶¶ 9, 13, 21.

4

administration that many of Lincoln High School's remedial students were not receiving the necessary resources to aid their learning as required by several federal laws.  See Pl's 56.1 Statement, Ex. 19.  Plaintiff argues in his Memorandum of Law in Opposition to the Defendant's motion for summary judgment that he "was called into the principals [sic] Quizzada's office and informed that he knew that the plaintiff had filed an EEOC complaint, [and] 'that he would be personally supervising the plaintiff.' "  See Docket #16, Plaintiff's Memorandum of Law in Opposition (herein, "Mem. in Opp.") at p. 15.  After receiving his right to sue letter on September 30, 2004, the Plaintiff commenced the present suit alleging claims of a hostile workplace environment, retaliation, unlawful discrimination and a supplemental state law claim for the intentional infliction of emotional distress.

For the following reasons, I conclude that the Plaintiff has failed to establish a genuine issue of material fact on any of his claims and that the instant motion for summary judgment should issue.

## DISCUSSION

A.  Summary Judgment Standard and Local Rule 56.1

1.  Summary Judgement Standard

Pursuant to the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).  A fact is "material" when it may affect the outcome of a case under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. Id. at 250. The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. Id.

Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original). "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir.1989) (quoting Anderson, 477 U.S. at 250 n. 5). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. of New York, Inc. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

2. <u>Local Rule 56.1</u>

Pursuant to the Local Rules for the Southern and Eastern Districts of New York, a moving party must attach a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." <u>See</u> Local Rule 56.1(a). A similar requirement is imposed upon the party opposing the motion for summary judgment. <u>See</u> Local Rule 56.1(b) (requiring the party opposing a motion for summary judgment to identify the material facts which it contends are in dispute). Should the non-moving party fail to respond to the facts alleged by the moving party to be undisputed, those facts "will be deemed to be admitted for purposes of the motion . . . ." Local Rule 56.1(c).

Thus, as a general rule, the Court may accept as true the material facts asserted by the moving party in an unopposed Rule 56.1 statement. <u>See</u> <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 31 n.2 (2d Cir. 1998). The Second Circuit has cautioned, however, that the opposing party's failure to comply with the local rules does not absolve the moving party from meeting its own burden of proof in its motion for summary judgment. <u>See</u> <u>Holtz v. Rockefeller Co.</u>, 258 F.3d 62, 72-74 (2d Cir. 2001). The <u>Holtz</u> court also noted that a district court has "broad discretion" to determine whether to overlook noncompliance with the local rules. <u>Id.</u> at 73. Synthesizing the spirit of the Local Rules, and the <u>Holtz</u> court's decision, failure to respond to a moving party's Rule 56.1 Statement may mean that the uncontested facts contained therein will be assumed to be true for the purposes of the motion if such facts are properly supported by citations to admissible evidence. <u>See</u> <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003).

In the present case, the Plaintiff appears to have mimicked the Defendant and asserted his own statement of undisputed, rather than disputed, material fact. <u>See</u> Docket #16, Plaintiff's

7

Statement of Material Facts Not in Dispute. The irony of this, of course, is that it is the Plaintiff's onus to establish that there exists a genuine issue of material fact for trial, not that there exists no genuine issue of material fact for trial. Additionally, as noted by the Defendant in its Reply Memorandum of Law, the Plaintiff has not complied with Local Rule 56.1(b) in that he failed to supply the Court with a list of "correspondingly numbered paragraph[s] responding to each number paragraph" asserted to be undisputed by the Defendant. See Local Rule 56.1(b); see also Docket #17, Defendant's Reply Memorandum of Law. Thus, under Local Rule 56.1(c), the asserted undisputed facts as put forth by the Defendant may be assumed to be true for purposes of this motion.

In light of this Court's "broad discretion" to determine the effect of noncompliance with the Local Rules, Holtz, 258 F.3d at 73, and because the Defendant's Rule 56.1 Statement is replete with citations to admissible evidence, I find that the uncontested facts asserted in the Defendant's Rule 56.1 Statement should be assumed to be true for the purposes of this motion. The corresponding "undisputed facts" asserted by the Plaintiff have little bearing on a decision in this case as they do not adequately establish any genuine issues of material that can preclude the entry of summary judgment in the Defendant's favor.[5]

B.  Plaintiff's Title VII Claims

    1.  Hostile Workplace Environment Claim

Although the terms "hostile workplace environment" do not appear in the text of Title

---

[5] In his 56.1 Statement of Undisputed Material Fact, the Plaintiff argues that he received satisfactory evaluations for a period of time, see Pl's 56.1 Statement at ¶3, establishes the number of sick days a tenured teacher receives, id. at ¶16, and asserts that he "complained to Vice Principal Baiocco about no overhead projector and screen," id. at ¶21.

VII's provisions, see Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 752 (1998), in Meritor Savings Bank v. Vinson, 477 U.S. 57, 73 (1986), the Supreme Court held that the text of Title VII permits a complainant to assert a cause of action for a hostile workplace environment based upon racial discrimination. In order to maintain an actionable hostile workplace environment claim, a plaintiff must establish that unlawful discrimination is so "sufficiently severe or pervasive [that it] 'alter[s] the conditions of [his or her] employment and creat[s] an abusive working environment.' " Meritor, 477 U.S. at 67. Thus, in order to establish a prima facie hostile workplace environment claim, "[t]he [P]laintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered." Fairbrother v. Morrison, 412 F.3d 39, 48 (2d Cir. 2005) (quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)). This showing involves both an objective and a subjective element: "the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Id. (quoting Feingold v. New York State, 366 F.3d 138, 150 (2d Cir. 2004)). In addition to these elements, the Plaintiff must also establish a "specific basis" for imputing the liable conduct to his employer. Id. at 49 (articulating the differing standards for imputing conduct to an employer based upon the actions of a supervisor or the actions of a coworker).[6]

A review of the record in the present case leads me to conclude that the Plaintiff has not carried his burden of presenting evidence which, if believed, would establish that the terms and

---

[6] As I explain, infra, because I find that the Plaintiff has not established a genuine issue of material fact on the objective prong of his hostile workplace claim, I need not reach the issue of imputing liability to his employer.

9

conditions of his employment were altered by "sufficiently severe and pervasive" harassment based upon his race. The Plaintiff's Rule 56.1 Statement of *undisputed* material fact does not discuss any form of racial harassment that could be construed as creating an abusive working environment. See, e.g., Pl's 56.1 Statement (arguing instances of disparate treatment, but offering no instances of racial harassment, ridicule, scorn or intimidation). Plaintiff's Affidavit suggests in a conclusory fashion that the Plaintiff "is employed in an adverse and hostile work environment" because he is "being subjected to disparage treatment [sic] by both the former and current administrations of Lincoln High School." See Docket #16, Plaintiff's Affidavit in Opposition to Motion for Summary Judgment (herein, "Pl's Affidavit") at ¶9. Absent some averment of specific fact establishing some form of specified harassment based upon the Plaintiff's race, such a tautological statement cannot establish a genuine issue for trial.[7] See Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) (upholding the district court's refusal to rely on Plaintiff's bald assertion that he was working in a hostile workplace environment).

The only inference of racial discrimination the Plaintiff musters in support of this claim is that Principal Ivan Toper allegedly told a union representative, who in turn told the Plaintiff, that he (the Plaintiff), "doesn't fit in." See Pl's Affidavit at ¶3. Assuming, *arguendo*, that this comment was "racially coded language" as the Plaintiff suggests, "there must be a steady barrage

---

[7] I note separately that Plaintiff's conclusory statement does not suggest that he has endured a hostile workplace environment because of his race; it only argues that such an environment exists because of "disparage treatment" [sic]. Absent an allegation that such discriminatory action, ridicule, intimidation or insult is based upon his race, the Plaintiff cannot establish a prima facie case of a hostile workplace environment predicated upon racial discrimination that can withstand summary judgment.

10

of opprobrious racial comments," Schwapp, 118 F.3d at 110 (citation omitted), in order for the terms and conditions of an employee's workplace environment to be altered by racial slurs or epithets. As the Plaintiff has offered nothing more than this one nebulous comment that is no more supportive of the Plaintiff's claim of racial discrimination than it would be of any other claim of employment discrimination, the Plaintiff has not supplied the court with the requisite evidence to establish a prima facie case of a hostile workplace environment that will withstand a motion for summary judgment. Accordingly, the Defendant's motion for summary judgment on the Plaintiff's hostile workplace environment cause of action is granted.

2. Retaliation [8]

Plaintiff also interjects a claim of retaliation in violation of Title VII based upon the "continuation of an unfair [evaluation] process [that] resulted in excessive scrutiny" after the Plaintiff filed his EEOC complaint in September of 2004. See Compl. at ¶25. In order to establish a prima facie claim of retaliation in violation of Title VII, the Plaintiff must establish:

---

[8] Although the Plaintiff's Complaint asserts a cause of action for retaliation under Title VII, the Plaintiff's Affidavit and Memorandum of Law both imply that he has suffered a form of First Amendment retaliation for "[speaking] out and inform[ing] Principal Ivan Toper, during a meeting in the Fall of 2003, that many students of Lincoln High School can neither read nor write with sufficient proficiency . . . ." See Pl's Affidavit at ¶2; see Pl's Mem in Opp at pp. 18-25 (citing cases involving instances of First Amendment retaliation).
  In order for the Plaintiff to assert a cognizable First Amendment retaliation cause of action against the Defendant, the Plaintiff must commence such a claim pursuant to 42 U.S.C. § 1983 and in accord with the principles established in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), and its progeny. As the Plaintiff's Complaint is specifically limited to causes of action brought pursuant to Title VII of the Civil Rights Act of 1964, which prohibits discrimination based upon an individual's race, color, religion, sex or national origin, I will disregard any argument the Plaintiff submits that he has suffered retaliation because of the exercise of his First Amendment rights. Additionally, in the wake of the Supreme Court's most recent ruling on the subject of First Amendment retaliation, Garcetti v. Ceballos, 04-473, 2006 WL 1455802 (May 30, 2006), the viability of any such potential claim is questionable.

"(1) [his] participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). Should a complainant establish these prima facie elements, pursuant to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the burden of proof then shifts to the defendant-employer to articulate a legitimate, non-retaliatory reason for taking the adverse employment action against the Plaintiff. See Jute, 420 F.3d at 173.

It is undisputed that the Plaintiff engaged in a form of protected activity on September 14, 2004, when he filed a charge of employment discrimination with the EEOC, see, e.g., Deravin v. Kerik, 335 F.3d 195, 203 n.6 (2d Cir. 2003) (explaining Title VII's anti-retaliation provisions), and I will assume for purposes of this motion only that the Defendant was aware of the Plaintiff's involvement in the protected activity, see Pl's Mem. in Opp. at p. 15 (citing Plaintiff's deposition testimony stating that Principal Quezada told the Plaintiff at the beginning of the 2004 school year that he knew that the Plaintiff had filed an EEOC complaint); see also FED. R. EVID. 801(d)(2)(D) (admission by party opponent's agent is admissible non-hearsay).

In support of the third prong of his retaliation claim, the Plaintiff argues that the negative formal observation evaluations and the negative annual evaluation for the 2004-05 academic year he received subsequent to filing his EEOC complaint constitute adverse employment actions in violation of Title VII. See Pl's Affidavit at ¶6; see also Pl's Mem. in Opp. at p. 15. Plaintiff's argument, however, is unconvincing.

Although the Second Circuit has explained that "[l]esser actions such as negative employment evaluation letters may . . . be considered adverse," Treglia v. Town of Manlius, 313

F.3d 713, 720 (2d Cir. 2002), and that "pecuniary emoluments" are not the *sine qua non* for establishing an adverse employment action, id., such negative employment evaluations must be accompanied by other adverse consequences to the terms and conditions of the Plaintiff's employment in order to qualify as an adverse employment action. See Fairbrother, 412 F.3d at 45-46 (limiting the language of Treglia and explaining that the negative employment evaluation received by the plaintiff in that case "was part of a panoply of evidence that the plaintiff suffered truly adverse consequences"); see also Sanders v. New York City Human Resources Administration, 361 F.3d 749, 756 (2d Cir. 2004) (holding that a negative employment evaluation that had no effect on the terms and conditions of the complainant's employment did not constitute an adverse employment action). The fact that the Plaintiff received several critical evaluations, alone, without some showing of how these evaluations impacted the terms and conditions of the Plaintiff's employment, does not raise a genuine issue of material fact for trial. See Sanders, 361 F.3d at 756 ("Plaintiff asserts that the adverse employment action . . . was the performance evaluation and its critical addendum. But she offered no proof that this evaluation had any effect on the terms and conditions of her employment.").

The only factual support the Plaintiff provides for his claim of retaliation is his own assertions that "such evaluations have negatively affected [his] ability to pursue pedagogical promotional opportunities, or even to pursue a new teaching career in a new district," see Pl's Affidavit at ¶6, and that "[m]aterial changes have occurred because [he is] compelled to spend 3-4 hours each week to prepare mandated weekly lessons plans that are punitive and take valuable time from being spent on and devoted to student learning activities," id. Beyond these conclusory statements, however, the Plaintiff has offered no admissible evidence to support these

13

claims of adverse effects. Plaintiff has neither been demoted from his current position of employment, nor transferred to a less desirable position of employment within the Yonkers Public School system. See Def's 56.1 Statement at ¶¶4, 5, 9, 10. In addition, the Plaintiff has offered no evidence that he sought another position of employment with a different school system or was denied such a position because of these negative evaluations. Absent some admissible evidence establishing such negative effects, the Plaintiff's bald assertions, alone, do not establish that the negative evaluations he received constitute adverse employment actions that can substantiate a claim of retaliatory conduct in violation of Title VII. See Schwapp, 118 F.3d at 111; see also Sanders, 361 F.3d at 755 (enumerating examples of adverse employment actions, including "termination from employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."). I find the Plaintiff's argument that he has endured a material change in the terms and conditions of his employment due to the fact that he has to spend an additional three to four hours per week – which is a little more than 45 minutes per day – preparing weekly lesson plans meritless as such a *de minimis* requirement does not even rise to the level of a "mere inconvenience or an alteration of job responsibilities." Sanders, 361 F.3d at 755 (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)).

Because the Plaintiff has not presented evidence sufficient to establish that he has suffered an adverse employment action, a showing that is needed to make out a prima facie case of retaliation in violation of Title VII, the Defendant's motion for summary judgment on this claim is granted.

3. <u>Unlawful Discrimination</u>

In addition to his claims of a hostile workplace environment and retaliatory conduct, Plaintiff also maintains a generic claim of unlawful discrimination based upon the "unfair treatment in evaluating [his] performance due to his race." <u>See</u> Compl. at ¶¶28-29. Presumably, Plaintiff seeks to assert a claim of unequal terms and conditions of employment based upon his race in violation of Title VII. <u>See</u> Pl's Affidavit at ¶¶4, 7 (alleging that the Plaintiff was documented for poor teaching practices that white teachers were not documented for using).

Akin to his claim of retaliatory conduct, the Plaintiff must submit to the court sufficient proof to establish a prima facie case of employment discrimination based upon unequal terms and conditions of employment in order to survive the instant motion for summary judgment. In order to maintain a Title VII unequal terms and conditions claim, the Plaintiff must establish that: (1) he belongs to a protected class of persons; (2) his job performance was satisfactory; (3) he suffered some adverse employment action; and (4) the adverse employment action occurred under conditions giving rise to an inference of discrimination. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802.

For the same reasons articulated, <u>supra</u>, the Plaintiff cannot establish a prima facie case of employment discrimination because he has not demonstrated that he has endured an adverse employment action violative of Title VII. Absent some evidence that the actions taken by the Defendant have amounted to a materially adverse change in the Plaintiff's working conditions, the Plaintiff's Title VII generic unlawful discrimination claim cannot withstand the instant motion. <u>See</u> <u>Castro v. New York City Board of Education Personnel Director</u>, 96 Civ. 6314

(MBM), 1998 WL 108004 (S.D.N.Y. Mar. 12, 1998) ("While adverse employment actions extend beyond readily quantifiable losses, not everything that make an employee unhappy is an actionable adverse action.") (quoting Smart v. Ball State Univ., 89 F.3d 437, 411 (7th Cir. 1996)). Accordingly, summary judgment is appropriate on this claim as well.

C.  Plaintiff's Supplemental State Law Intentional Infliction of Emotional Distress Claim

Lastly, Plaintiff asserts a supplemental state law claim for the intentional infliction of emotional distress against the Defendant based upon its use of an unfair evaluation process "to hold the plaintiff up to scorn, ridicule and embarrassment in his profession." See Compl. at ¶27. Because the Plaintiff has offered no evidence to establish the "rigorous and difficult" standards of a claim of intentional infliction of emotional distress, summary judgment should issue on this claim as well. See Howell v. New York Post Company, Inc., 81 N.Y.2d 115, 122 (1993).

Under New York law, in order to assert an intentional infliction of emotional distress cause of action, the Plaintiff must make a showing of: (1) extreme and outrageous conduct on the part of the Defendant; (2) the Defendant's intent to cause, or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress. See Howell, 81 N.Y.2d at 121; see also Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001). Liability on this claim is appropriate only when "the conduct [of the Defendant] has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." RESTATEMENT (SECOND) OF TORTS § 46, cmt. d; see also Fischer v. Maloney, 43 N.Y.2d 553, 557 (1978) (adopting the Restatement (Second) of Torts' articulation of a claim of intentional infliction of emotional distress).

A review of the evidenced submitted by the Plaintiff, however, leads me to conclude that the Plaintiff's evidence falls short of meeting this heightened standard. Focusing primarily on the tort's first element, the outrageousness of the Defendant's conduct, the Plaintiff has put forth no evidence to establish a genuine issue of material fact that would cause "an average member of the community . . . to exclaim, 'Outrageous!' " RESTATEMENT (SECOND) OF TORTS § 46, cmt. d; see also Howell, 81 N.Y.2d at 121 (explaining that whether the defendant's conduct meets the level of outrageousness is a threshold question of law for the Court to assess). The Plaintiff's claim that the evaluation process – an individualized process involving only the Plaintiff and his supervisors – is unfair is insufficient to state a claim of intentional infliction of emotion distress.[9] In the absence of a showing that the evaluation process as applied to the Plaintiff was outrageous, or the Defendant's alleged misuse of the evaluation process was outrageous, the Defendant's motion for summary judgment is granted.

---

[9] In support of this finding, I think the following narrative offered by the New York Court of Appeals in Howell is instructive, "Indeed, of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous." 81 N.Y.2d at 122 (citations omitted).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted *in toto* and the Plaintiff's Complaint is dismissed with prejudice.

Dated:	June 7, 2006
	White Plains, New York

**SO ORDERED**

Lisa Margaret Smith
Chief United States Magistrate Judge
Southern District of New York